[Cite as *Disciplinary Counsel v. Laatsch*, 123 Ohio St.3d 140, 2009-Ohio-4204.]

DISCIPLINARY COUNSEL *v.* LAATSCH.

[Cite as *Disciplinary Counsel v. Laatsch,*

123 Ohio St.3d 140, 2009-Ohio-4204.]

*Attorneys — Misconduct — Advancing financial assistance to a client — Failure*

*to maintain proper accounts — Conditionally stayed suspension.*

(No. 2009-0399 — Submitted April 21, 2009 — Decided August 27, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-035.

_____

**Per Curiam**.

{¶ 1} Respondent, Morris Herman Laatsch III of Akron, Ohio, Attorney Registration No. 0010279, was admitted to the practice of law in Ohio in 1975. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, all stayed on condition of no further misconduct, based on findings that he advanced funds, both personally and from his client trust account, to a client whom he was representing in a personal-injury claim. We accept the board's findings of professional misconduct and the recommendation for a six-month, conditionally stayed suspension.

{¶ 2} Relator, Disciplinary Counsel, charged respondent in a single-count complaint with violations of the Disciplinary Rules of the Code of Professional Responsibility. A panel of three board members heard the case, made findings of fact and conclusions of law, and recommended the six-month stayed suspension. The board adopted the panel's findings of misconduct and recommendation.

**Misconduct**

**{¶ 3}** Respondent, a general practitioner with extensive experience in bankruptcy, agreed to represent a client in 2004 in a personal-injury claim against a fast-food restaurant. Respondent had previously represented the client and the client's sister after both were injured in a traffic accident, and he had resolved that case successfully. Their attorney-client relationship spanned approximately 15 years, during which respondent assisted the client in a variety of other legal matters.

**{¶ 4}** The client, a single father, had filed for bankruptcy, and his home was in foreclosure. Between August 2004 and May 2007, the client prevailed upon respondent to advance funds for living expenses in anticipation of damages that the client hoped to recover from the restaurant. Respondent acquiesced, lending the client $5,400. He lent approximately $3,400 from his Interest on Lawyers' Trust Accounts ("IOLTA") account, representing entrusted client funds, and approximately $2,000 from his personal bank account through 17 disbursements of up to $300 each. Respondent kept track of each disbursement to the client through ledger entries.

**{¶ 5}** In May 2007, respondent and the client settled with the restaurant for $5,500, which they thought to be fair, given the client's relatively minor injury. The client repaid the loans with settlement proceeds, and respondent deposited the funds in his IOLTA account, withdrawing amounts to repay himself. Respondent paid the remaining $100 to his client, never charging an attorney fee.

**{¶ 6}** The parties stipulated that in representing this client, respondent violated DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law), 5-103(B) (a lawyer shall not advance or guarantee financial assistance to the client), and 9-102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his

2

clients regarding them). The board thus found the requisite clear and convincing evidence to prove these breaches of the ethical code. We accept these findings of misconduct.

### Sanction

{¶ 7} In recommending a sanction, the board weighed the aggravating and mitigating factors in respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 8} The board found no aggravating features. In mitigation, the board accepted the parties' stipulations to the following factors listed in BCGD Proc.Reg. 10(B)(2)(a), (b), and (d): absence of a prior disciplinary record, absence of a dishonest or selfish motive, and full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings. Although the parties did not stipulate to respondent's overall good character and reputation, see BCGD Proc.Reg. 10(B)(2)(e), the board also accepted eight letters from attorneys, including one judge, attesting to respondent's competence and integrity as a lawyer and his devotion to family.

{¶ 9} Relator recommended a 12-month suspension with six months stayed; respondent recommended a public reprimand or a six-month suspension, all conditionally stayed. In adopting the panel's recommendation for a stayed suspension, the board distinguished *Disciplinary Counsel v. Freeman,* 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, which relator cited to support an actual suspension:

{¶ 10} "In *Freeman,* the court rejected the board's recommended sanction of a 12 month suspension with 12 months stayed and instead adopted a sanction of 12 months with 6 months stayed. In *Freeman,* the lawyer admitted that from 2004 through 2006 he used his client trust accounts as personal checking accounts to pay personal bills and as law office operating accounts to pay office bills. The

lawyer stated 'that he had commingled client and lawyer funds in those accounts, that he had overdrawn the trust accounts 14 times during this period, and that he had failed to maintain an appropriate accounting of client funds deposited into the accounts.' Id at ¶ 3. In addition, the lawyer showed significant disregard for the disciplinary process by ignoring and failing to respond to numerous correspondence by the Relator. Finally, the lawyer in *Freeman* was diagnosed with 'adjustment disorder with mixed anxiety and depressed mood.' Id at ¶ 15. The lawyer's doctor concluded that respondent's 'recovery is incomplete and that he is not yet capable of providing legal services to clients beyond routine legal matters.' Id at ¶ 22. The Court held that 'imposing an actual suspension upon respondent will serve the dual purpose of protecting the public and providing respondent with additional time to complete his treatment and recovery.' Id at ¶ 22.

{¶ 11} "However, the facts in *Freeman* and the matter at hand differ significantly. The Respondent in this matter cooperated fully with the Disciplinary Counsel's investigation and does not suffer from any mental disorder. He had one overdraft in his IOLTA account (which triggered this investigation). Respondent had acted as a father-figure for [this client] for a number of years. He wanted to assist [the client in getting] through a tough period in his life. Based on the evidence and hearing, the Panel believed the Respondent allowed his feelings toward [the client] and [the client's] condition [to] get the best of him. The Panel was satisfied that the loans given to [the client] had no bearing on the settlement result. Given the facts and evidence surrounding [the restaurant], Respondent was fortunate to procure the settlement he received. Furthermore, the Panel does not believe the Respondent poses a threat to the public[,] nor does Respondent require additional time for treatment and recovery."

{¶ 12} Respondent has never lent money to another client. The underlying incident is thus an isolated one, posing little or no risk to the public,

and a stayed suspension is appropriate. We agree with the board. Respondent is therefore suspended from the practice of law in Ohio for six months; however, the suspension is stayed on the condition of no further misconduct. If respondent violates the condition for the stay, the stay will be lifted, and respondent will serve the entire six-month suspension.

{¶ 13} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, J., dissents and would publicly reprimand respondent.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

Buckingham, Doolittle & Burroughs, L.L.P., and Peter T. Cahoon, for respondent.

_____